# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW YUN HEE LEE, <br><br> Defendant. | Case No. 3:24-cr-00010-SLG |

## ORDER ON MOTION TO SUPPRESS

Before the Court at Docket 22 is Defendant Andrew Yun Hee Lee's Motion to Suppress. The United States responded in opposition at Docket 33. The motion was referred to the Honorable Magistrate Judge Matthew M. Scoble. Judge Scoble held an evidentiary hearing on September 30, 2024.[1] At Docket 51, Judge Scoble issued his Report and Recommendation, in which he recommended that the motion be granted. The United States filed objections to the Report and Recommendation at Docket 54, to which Defendant replied at Docket 55.

The matter is now before this Court pursuant to 28 U.S.C. § 636(b)(1). That statute provides that a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge."[2] A court is to "make a de novo determination of those portions of the Magistrate Judge's

---

[1] Docket 44; Docket 49 (Tr.).

[2] 28 U.S.C. § 636(b)(1).

report or specified proposed findings or recommendations to which objection is made."[3] The Court has reviewed de novo the motion, related filings, evidentiary hearing transcript, and the Report and Recommendation. As explained below, the Court accepts in part and rejects in part the Report and Recommendation and orders that the motion to suppress be DENIED.

## BACKGROUND

On October 20, 2022, State of Alaska Probation Officers Sarah Jones and Joshua Kopp went to Mr. Lee's residence.[4] They intended to conduct a search of his home pursuant to a condition of parole, which had been ordered after his 2001 state conviction for second degree murder.[5] The condition provided as follows:

> I will not at any time have on my person, in my residence, or in my vehicle or any vehicle under my control any drugs or paraphernalia normally associated with illicit use of drugs. I will submit to testing at any reasonable time upon request by or at the direction of a parole officer. Upon request by or at the direction of a parole officer at any reasonable time, I will submit to a search of my person, my personal property, my residence, my vehicle, or any vehicle under which I have control for the presence of illicit drugs or drug paraphernalia.[6]

When the probation officers arrived, Mr. Lee, his aunt, and his father were home.[7] Mr. Lee translated his interaction with the officers into Korean for his aunt

---

[3] *Id.*

[4] Docket 22-1 at 3; Docket 49 at 12.

[5] Docket 22-1 at 1, 3; Docket 49 at 12-13.

[6] Docket 33-2 at 4.

[7] Docket 22-1 at 3; Docket 49 at 14.

Case No. 3:24-cr-00010-SLG, *United States v. Lee*
Order on Motion to Suppress
Page 2 of 10
Case 3:24-cr-00010-SLG-MMS    Document 56    Filed 02/26/25    Page 2 of 10

and father.[8] When the probation officers told Mr. Lee they were going to conduct a home search, he became agitated, and the officers struggled to keep Mr. Lee and his family members in one place.[9] Instead of staying in the living room, Mr. Lee requested to use the restroom and was generally uncooperative during the search.[10] While the officers were trying to gather everyone in the downstairs living room, Mr. Lee ran up the stairs and identified one of the bedrooms as his.[11] In the bedroom that Mr. Lee identified, Officer Jones saw Mr. Lee's father at a computer and a child's blanket.[12] Officer Jones doubted that the bedroom was Mr. Lee's, and a brief search revealed that the clothing in the bedroom did not match the size or style that Mr. Lee normally wore and there was nothing else in the room other than a prescription bottle with Mr. Lee's name on it to indicate that the bedroom was his.[13] Officer Jones concluded that the bedroom was not Mr. Lee's.[14] The residence contained three other bedrooms: a room that Mr. Lee said his daughter

---

[8] Docket 49 at 14.

[9] Docket 49 at 14–15.

[10] Docket 49 at 15; Docket 22-1 at 3.

[11] Docket 49 at 16, 18; Docket 22-1 at 3.

[12] Docket 49 at 18–19.

[13] Docket 49 at 18–19; *see* Docket 22-1 at 3 ("No items belonging to the parolee were observed in that room, everything was labeled "Brian Lee," the parolee's father.").

[14] Docket 49 at 24; Docket 33-1 at 2.

Case No. 3:24-cr-00010-SLG, *United States v. Lee*
Order on Motion to Suppress
Page 3 of 10
Case 3:24-cr-00010-SLG-MMS    Document 56    Filed 02/26/25    Page 3 of 10

and mother slept in, a room belonging to Mr. Lee's aunt, and a locked room that Mr. Lee said was occupied by his cousin, Paul Michael.[15]

After searching the first bedroom, Officer Jones decided to search Mr. Lee's vehicle, which she had seen parked outside when she arrived.[16] Mr. Lee told her where she could find the keys.[17] Officer Jones was permitted to search Mr. Lee's vehicle as per the condition of parole.[18] In the vehicle, Officer Jones found a tooter straw[19] and two cell phones, which she believed could be indicative of the sale or use of narcotics, with his prior police contacts in mind.[20] While Officer Jones was searching the vehicle, she spoke to Paul Michael on the phone. He confirmed that he was Mr. Lee's cousin but said that he did not live in the home.[21]

Officer Jones went back inside the residence, bringing with her the tooter straw, cellphones, and a set of house keys she had found.[22] She told Mr. Lee that

---

[15] Docket 49 at 20–21, 59; *see* Docket 22-1 at 3 ("There was a locked bedroom which the parolee reported belonged to Paul Michael . . . ."); Docket 33-1 at 2 ("D's aunt opened a room . . . reporting [it] was her room. This was confirmed by D. D reported the room at the far end of the hall was his mother[']s room. The room in the middle of the hall D reported was Paul Michael's room. . . . D reported the room was locked and POs were not allowed in the room.").

[16] Docket 49 at 13.

[17] Docket 49 at 13, 26.

[18] Docket 33-2 at 4.

[19] Docket 49 at 28 (Jones testifying that a tooter straw is "a straight pipe type thing, usually made out of pens or other glass material, plastic material that's used for smoking or snorting narcotics.").

[20] Docket 49 at 27–28; Docket 33-1 at 2.

[21] Docket 49 at 29-30. According to the supervision contact report, Mr. Michael told Officer Jones that the locked bedroom was Mr. Lee's. Docket 33-1 at 2.

[22] Docket 49 at 31.

Case No. 3:24-cr-00010-SLG, *United States v. Lee*
Order on Motion to Suppress
Page 4 of 10
Case 3:24-cr-00010-SLG-MMS    Document 56    Filed 02/26/25    Page 4 of 10

she was going to search the locked room.[23] Mr. Lee began talking with his father in Korean, was agitated, and repeatedly stood up and sat down.[24] Officer Kopp placed Mr. Lee in handcuffs and sat him down in the living room.[25]

Officer Jones went up the stairs to search the locked bedroom.[26] But before she entered the bedroom, Mr. Lee's father swatted her hand and told her "No."[27] In light of this sequence of events, in Officer Jones's "professional opinion," she believed that Mr. Lee had "refused a parole search."[28] Officer Jones returned downstairs without searching the bedroom and placed Mr. Lee under arrest for refusing a search of his residence.[29]

At the evidentiary hearing, Mr. Lee testified that he tried to comply with the probation officers' directions, had answered their questions, and had told the

---

[23] Docket 49 at 31.

[24] Docket 49 at 31.

[25] Docket 49 at 31.

[26] Docket 49 at 31.

[27] Docket 49 at 32.

[28] Docket 49 at 58; *see* Docket 49 at 37 (Jones testifying that "an issue when we went to his house because he's immediately running up the stairs, and nobody's complying. I don't know what's behind that door. I don't know who could be behind that door. I knew from my experience from reviewing his file that his discretion – his discretionary parole had been revoked because of a home visit that had been conducted where they had fund multiple different controlled substances, multiple different firearms. So in my head, I thought the parole remand was for refusing the search. . . . Running up the stairs, trying to get to the bedroom before the probation officer does when we've already informed you from the moment you opened the door that we are here for a search is a -- was a major red flag.").

[29] Docket 49 at 32.

Case No. 3:24-cr-00010-SLG, *United States v. Lee*
Order on Motion to Suppress
Page 5 of 10
Case 3:24-cr-00010-SLG-MMS   Document 56   Filed 02/26/25   Page 5 of 10

officers where they could find his car keys.[30] He also said that he was not given an opportunity to show Officer Jones items in the first bedroom that would indicate that it was in fact his room.[31]

## LEGAL STANDARD

"The touchstone of the Fourth Amendment is reasonableness. The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable."[32] "A seizure conducted without a warrant is '*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'"[33] "The Government bears the burden of showing that a warrantless arrest did not violate the Fourth Amendment."[34] "'[P]robable cause is not required to arrest a parolee for a violation of parole.' Instead, a parole officer may arrest a parolee if the officer 'reasonably believes a parolee is in violation of [his] parole.'"[35]

## DISCUSSION

The Government objects to four of Judge Scoble's factual findings:

---

[30] Docket 49 at 64-65.

[31] Docket 49 at 65.

[32] *Florida v. Jimeno*, 500 U.S. 248, 250 (1991) (citations omitted).

[33] *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001) (emphasis in original) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993)).

[34] *United States v. Valencia*, 24 F.3d 1106, 1108 (9th Cir. 1994).

[35] *Cornel v. Hawaii*, 37 F.4th 527, 532 (9th Cir. 2022) (first quoting *Sherman v. United States Parole Comm'n*, 502 F.3d 869. 884 (9th Cir. 2007) (citation omitted); and then quoting *United States v. Rabb*, 752 F.2d 1320, 1324 (9th Cir. 1984)).

Case No. 3:24-cr-00010-SLG, *United States v. Lee*
Order on Motion to Suppress
Page 6 of 10
Case 3:24-cr-00010-SLG-MMS    Document 56    Filed 02/26/25    Page 6 of 10

> (1) Defendant did not make repeated false statements about which bedroom was his; (2) the PO's search of the first bedroom was insufficient; (3) Defendant did not have a sufficient opportunity to correct or explain himself; and (4) the PO's arrested Defendant out of frustration for his and his family's lawful but bothersome behavior.[36]

The Government also objects to Judge Scoble's conclusion that Officer Jones did not have probable cause to arrest Mr. Lee and Judge Scoble's ultimate recommendation that the Court grant Mr. Lee's Motion to Suppress.[37]

Judge Scoble and the parties applied the probable cause standard to Officer Jones's arrest of Mr. Lee. However, as noted above, in the Ninth Circuit, the Fourth Amendment permits the warrantless arrest of a parolee when "the officer 'reasonably believes a parolee is in violation of [his] parole.'"[38]

In this case, as a condition of parole, Mr. Lee had to submit to a search of his residence, and he could not have drug paraphernalia in his vehicle. The Court finds that Officer Jones reasonably believed that Mr. Lee was refusing to submit to a search of his residence when she arrested him for that parole violation.

First, Mr. Lee represented that one bedroom was his. Officer Jones searched that bedroom and failed to find sufficient evidence that the bedroom was in fact Mr. Lee's. Mr. Lee's father was in the bedroom, as were several items bearing his father's name. The only thing found that appeared to be Mr. Lee's in

---

[36] Docket 54 at 2-3.

[37] Docket 54 at 2-3.

[38] *Cornel*, 37 F.4th at 532 (quoting *Rabb*, 752 F.2d at 1324).

Case No. 3:24-cr-00010-SLG, *United States v. Lee*
Order on Motion to Suppress
Page 7 of 10
Case 3:24-cr-00010-SLG-MMS   Document 56   Filed 02/26/25   Page 7 of 10

that room was one prescription bottle with his name on it. Further, Officer Jones said that the clothing in the bedroom was not Mr. Lee's size or style. While her search was brief, she reasonably concluded that the bedroom was not Mr. Lee's.

Second, Mr. Lee represented that another bedroom, which was locked, belonged to his cousin Paul Michael and said that Officer Jones could not enter it. Officer Jones spoke with Mr. Michael, and he said that it was not his bedroom, and he did not live in the house at all. There were only two other bedrooms in the home; one belonged to Mr. Lee's aunt, and Mr. Lee said another was occupied by his daughter and mother.

Having eliminated the first bedroom from consideration as Mr. Lee's bedroom and the bedrooms of Mr. Lee's aunt and mother, the only remaining bedroom that could have been Mr. Lee's was the locked bedroom that he falsely said was his cousin's. Officer Jones testified that, in her professional opinion, Mr. Lee had refused a parole search.[39] Based on these facts, which Officer Jones testified to and are corroborated by other evidence in the record, the Court finds that Officer Jones reasonably believed that Mr. Lee was refusing a search of his residence.

The Government objects to Judge Scoble's reliance on the "cursory" nature of Officer Jones's search of the first bedroom and her failure to "question[] [Mr. Lee] about her suspicions and give[] him a chance to correct her impression or to

---

[39] *See* Docket 49 at 37, 58.

Case No. 3:24-cr-00010-SLG, *United States v. Lee*
Order on Motion to Suppress
Page 8 of 10
Case 3:24-cr-00010-SLG-MMS   Document 56   Filed 02/26/25   Page 8 of 10

confess to lying."[40] Officer Jones testified that she "believe[d] we gave Mr. Lee multiple opportunities to be truthful when asked multiple times if he was going -- you know, who stayed where or are you going to comply with the search."[41] She said that "after [she] searched the bedroom" she "confronted him about, like, well, there's nothing of yours in that bedroom."[42] And once she talked with Mr. Michael and learned that Mr. Lee misrepresented who resided in the locked bedroom, she provided Mr. Lee with another opportunity to "say where he really stayed."[43] In light of the sequence of events and Officer Jones's testimony, the Court finds that Mr. Lee was provided with an adequate opportunity to be truthful and that a lack of additional chances to be truthful does not undermine Officer Jones's reasonable belief that Mr. Lee was refusing a parole search.

Officer Jones also searched Mr. Lee's car and found multiple cellphones and a tooter straw, which Officer Jones said was "indicative of somebody who is involved in the narcotic sales and use" particularly considering her knowledge of Mr. Lee's prior contacts with police while on parole.[44] Mr. Lee was in possession of a tooter straw, which independently violated a condition of his parole.

---

[40] Docket 54 at 3; Docket 51 at 14.

[41] Docket 49 at 59.

[42] Docket 49 at 60.

[43] Docket 49 at 60.

[44] Docket 49 at 28.

Case No. 3:24-cr-00010-SLG, *United States v. Lee*
Order on Motion to Suppress
Page 9 of 10
Case 3:24-cr-00010-SLG-MMS    Document 56    Filed 02/26/25    Page 9 of 10

Accordingly, the Court adopts in part and rejects in part the Report and Recommendation as set forth above, and IT IS ORDERED that the Motion to Suppress at Docket 22 is **DENIED**.

DATED this 26th day of February, 2025, at Anchorage, Alaska.

<u>/s/ Sharon L. Gleason</u><br>
UNITED STATES DISTRICT JUDGE

Case No. 3:24-cr-00010-SLG, *United States v. Lee*
Order on Motion to Suppress
Page 10 of 10
Case 3:24-cr-00010-SLG-MMS   Document 56   Filed 02/26/25   Page 10 of 10